UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON ADAMS, | ) Case No. ED CV 11-1669-SP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

**I.**

**<u>INTRODUCTION</u>**

On October 25, 2011, plaintiff Aaron Adams filed a complaint against defendant Michael J. Astrue, seeking a review of a denial of supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents six disputed issues for decision: (1) whether the

1

administrative law judge ("ALJ") properly determined that plaintiff could perform other work; (2) whether the ALJ properly considered plaintiff's credibility; (3) whether the ALJ properly considered the opinion of James B. Martin; (4) whether the ALJ properly assessed plaintiff's residual functional capacity ("RFC"); (5) whether the ALJ posed a complete hypothetical to the vocational expert; and (6) whether the ALJ complied with the Appeals Council remand order. Memorandum in Support of Plaintiff's Complaint ("Pl. Mem.") at 3-23; Defendant's Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-10.

Having carefully studied, inter alia, the parties's written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly determined that plaintiff could perform other work, properly considered plaintiff's credibility, properly considered the opinion of Martin, properly assessed plaintiff's RFC, posed a complete hypothetical to the vocational expert, and complied with the Appeals Council remand order. Consequently, this court affirms the decision of the Commissioner of the Social Security Administration ("Commissioner") denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 39 years old on the date of his September 8, 2009 hearing, completed some high school and one year of community college. AR at 27-90, 129, 267. He has no past relevant work.[1] *Id.* at 20.

On March 31, 2006, plaintiff filed an application for SSI, alleging an onset date of August 1, 1995, due to attention deficit disorder, depression, and spine

---

[1] Although plaintiff's Earnings Records appear to reflect that he held steady jobs from 2001-2005 (AR at 266), plaintiff testified that he did not perform most of the jobs listed in the record (*id.* at 84). Further, plaintiff stated that the longest job he ever held was for a month as a stocker. *Id.* at 273.

shoulder, and knee problems.[2] *Id.* at 167, 254, 272. The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 160-64,167-71, 173.

On December 1, 2008, plaintiff, represented by counsel, appeared and testified before ALJ Thomas Gaye. *Id*. at 123-41. ALJ Gaye postponed the hearing in order to allow plaintiff time to obtain updated medical records. *Id.* at 139-40. On March 2, 2009, plaintiff again testified before ALJ Gaye. *Id.* at 91-122. Medical expert Dr. Shapiro, vocational expert Troy Scott, and plaintiff's mother, Cheryl Adams, also provided testimony. *Id.* ALJ Gaye denied benefits on April 6, 2009.[3] *Id.* at 147-55.

Plaintiff filed a request for review of the decision on April 15, 2009. *Id.* at 216. On June 25, 2009, the Appeals Council remanded the case, ordering that the ALJ: further evaluate plaintiff's mental impairment; further consider plaintiff's RFC; evaluate the opinion of Martin and obtain additional evidence from him;[4] and if warranted, obtain supplemental evidence from a vocational expert. *Id.* at 157-59.

On September 8, 2009, plaintiff appeared and testified at a hearing before ALJ David M. Ganly. *Id.* at 27-90. Two medical experts, Dr. Samuel Landau and Joseph Malancharuvil, plaintiff's mother, Cheryl Adams, and vocational expert

---

[2] Plaintiff filed a prior application on April 14, 1997, which was denied. AR at 254

[3] This court will not discuss ALJ Gaye's evaluation because the presently appealed decision was "new and independent" and did not incorporate the findings in the April 6, 2009 denial. AR at 29.

[4] As evidenced by its cites to 20 C.F.R. § 416.927 and Social Security Rulings ("SSR") 96-2p and 96-5p, the Appeals Council appeared to be under the misconception that James B. Martin was an acceptable medical source. AR at 158.

("VE") Sandra Fioretti also testified at the hearing. *Id.* The ALJ denied benefits on February 12, 2010.[5] *Id.* at 11-22.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since March 31, 2006, the application date. *Id.* at 13.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: asthma; cervical spine pain of unknown etiology; attention deficit disorder; a mood disorder, not otherwise specified with possible bipolar feature; and a possible obsessive compulsive disorder. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 14.

The ALJ then assessed plaintiff's RFC [6] and determined that he had the capacity to perform a narrow range of medium work as defined in 20 C.F.R. § 416.967(c) with the following limitations: plaintiff could stand/walk/sit for six hours each in an eight-hour period; could occasionally stoop and bend; was precluded from climbing ladders and working at heights or balance; could "do occasional neck motion but should avoid extremes of motion;" could maintain a

---

[5] All subsequent references to the "ALJ" and "VE" refer to ALJ Ganly and Fioretti.

[6] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

fixed head position for fifteen to thirty minutes at a time, occasionally, but plaintiff's head should be held in a comfortable position most of the time; could not operate motorized equipment or work around unprotected machinery; and could not be in charge of the safety of others. *Id*. at 15. In addition, the ALJ determined that plaintiff required an air-conditioned work environment that was free of excessive inhaled pollutants, could perform simple repetitive tasks as well as moderately complex tasks of four to five steps, and could perform object-oriented tasks in a habituated setting that did not require hypervigilence. *Id.*

The ALJ found, at step four, that plaintiff had no past relevant work. *Id.* at 20.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform. *Id.* at 20-21. Consequently, the ALJ concluded that plaintiff was not under a disability since March 31, 2006. *Id.* at 21.

The decision of the Appeals Council stands as the final decision of the Commissioner.

### III.
### STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v.*

*Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ Did Not Err at Step Five

Plaintiff argues that the ALJ erred at step five because the jobs identified by the vocational expert were inconsistent with plaintiff's RFC. *Id.* at 3-9. Specifically, plaintiff contends that the identified jobs required working with machinery, close attention to detail, and adherence to safety procedure. *Id.* at 6. Plaintiff further claims that the ALJ failed to address the inconsistencies between the testimony of the vocational expert and the Dictionary of Occupational Titles ("DOT"). *Id.* at 7. The court disagrees.

At step five, the burden shifts to the ALJ to identify jobs that exist in significant numbers in the national economy that the claimant can perform. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The ALJ can meet this burden by: (1) the testimony of a VE, who can assess the claimant's limitations and identify any existing jobs the claimant can perform; or (2) relying on the Medical-Vocational Guidelines set forth in 20 C.F.R. part 404, Subpart P, Appendix 2. *Lounsburry*, 468 F.3d at 1114; *Tackett*, 180 F.3d at 1100-01. The ALJ may also rely on the DOT in evaluating whether the claimant is able to perform other work in the national economy. *Johnson*, 60 F.3d at 1435; *see also* 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information).

An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons for any conflict. *Massachi*, 486 F.3d 1152-53; SSR 00-4p (an ALJ "has an affirmative responsibility to ask about any possible conflict between the [VE's testimony] and information provided in the DOT"). "In order for an ALJ to accept vocational expert testimony that contradicts the [DOT], the record must contain persuasive evidence to support the deviation." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001) (internal quotation marks and citation omitted). "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (internal citation omitted).

The ALJ here, at step five, relied on the testimony of the vocational expert to determine whether plaintiff, given his RFC, could perform other jobs that exist

in significant numbers in the national economy. *See* AR at 78-89. The vocational expert testified that there was a "variety" of assembly work that plaintiff could do given his limitations, including small products assembler II, hand packager, and kitchen helper. *Id*. at 87. In response to a more restrictive hypothetical, the vocational expert identified toy assembler and optical assembly as examples of jobs that plaintiff could do. *Id.* at 88. After the ALJ inquired, the vocational expert also testified that the identified jobs were consistent with the DOT.[7] *Id.* Accordingly, the ALJ found that plaintiff could perform, among other jobs, the occupations of small products assembler II, hand packager, and kitchen helper. *Id.* at 21.

Based on the DOT descriptions, the duties for a small products assembler II, hand packager, kitchen helper include the possible use of motorized equipment. A small products assembler may have to use motorized equipment such as portable powered tools, bench machines, arbor presses, or punch presses. DOT 739.687-030. A hand packager may need to use a conveyor. DOT 920.587-018. A kitchen helper may require the use of a peeling machine or burnishing-machine tumbler. DOT 318.687-010. But the DOT does not require that a person be able to perform ***all*** of the listed duties of the job, but rather "any combination" of them. *See* DOT 739.687-030, 920.587-018, 318.687-010; *see also Johnson*, 60 F.3d at 1435 (stating that the DOT "provides only occupational information on jobs as they have been found to occur, but they do not coincide in every respect with the contents of jobs as performed in particular establishments or at certain localities") (citation omitted). Thus, the jobs can be performed without operating motorized

---

[7] The list of jobs cited by the vocational expert was not an exclusive list. The vocational expert testified that these positions were merely representative of the work plaintiff could perform. AR at 88.

equipment and the testimony of the vocational expert does not plainly conflict with the DOT. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citation omitted).

Accordingly, the ALJ did not err at step five.

**B.     The ALJ Properly Considered Plaintiff's Credibility**

Plaintiff claims that the ALJ improperly rejected plaintiff's credibility. Pl. Mem. at 9-14. Specifically, plaintiff contends that plaintiff's daily activities, including his ability to care for his daughter, is not a clear and convincing reason for discounting his testimony. *Id.* at 12. Plaintiff also argues that the ALJ failed to specify which statements were not credible. *Id.* at 11. The court disagrees.

The ALJ must make specific credibility findings, supported by the record. SSR 96-7p. To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including:  (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a

claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that the statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with his RFC. AR at 16.

At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Here, the ALJ discounted plaintiff's credibility because: (1) there was a lack of objective medical evidence to support the alleged symptoms; (2) he received conservative treatment; (3) he failed to adhere to his treatment plan; (4) his daily activities were inconsistent with his alleged symptoms; and (5) he had a spotty work record. *Id.* at 16-17. These were clear and convincing reasons supported by substantial evidence.

First, the ALJ found that the objective medical evidence did not support plaintiff's symptoms. Regarding plaintiff's mental limitations, the ALJ noted that the mental status examinations were "essentially normal except for impaired concentration with no significant cognitive deficits noted." *Id.* at 16; *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative objective medicine may be one factor in evaluating credibility). On August 28, 2006, Dr. Romualdo R. Rodriguez, a psychiatrist examined plaintiff. AR at 366-72. Dr. Rodriguez noted that plaintiff was able to make good eye contact and interpersonal contact, cooperative, coherent, organized, alert, and oriented. *Id.* at 369. During the examination, plaintiff performed proficiently on the tests. *Id.* at 370. Dr. Rodriguez opined that with proper treatment, plaintiff "could easily

recover from his problems within [twelve] months," and even without the treatment he primarily had only slight non-exertional limitations. *Id*. at 371-72. In 2009, plaintiff's treating physician at the Riverside County Department of Mental Health conducted several mental health examinations and opined that other than impaired concentration, plaintiff's appearance, mood, affect, and speech were appropriate. *Id*. at 403, 405, 411-12.

As for plaintiff's physical limitations, the ALJ noted that: there was an absence of reflex, sensory, and neurological deficits; plaintiff's physical examination was "essentially within normal limits, showing only decreased flexion/extension of the neck with tenderness to palpation"; and an x-ray showed a normal cervical spine. *Id.* at 16, 19. The ALJ's findings are supported by plaintiff's treatment records. *See id.* at 343, 346-52. Thus, the ALJ's determination that the objective medical evidence did not support the alleged symptoms was supported by substantial evidence.

Second, the ALJ correctly noted that plaintiff's mental health treatment was conservative and non-aggressive. *Id.* at 16-17; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *Tommasetti*, 533 F.3d at 1039 (conservative treatment may be a clear and convincing reason for discounting a claimant's credibility). Plaintiff's mental health treatment plan consisted only of periodic prescriptions for medications such as Wellbutrin and Prozac, and individual therapy.[8] *See, e.g.,* AR at 48, 276, 357-60, 393, 415. Indeed, plaintiff did not use any psychiatric medications from approximately 2001 through at least 2006. *Id.* at 334, 367.

---

[8] Plaintiff was hospitalized twice sixteen or seventeen years ago, but did not have any subsequent hospitalizations. AR at 367.

11

As for plaintiff's physical impairments, plaintiff also received periodic conservative treatment, primarily in the form of pain relievers. *See, e.g.*, *id*. at 38, 334. The ALJ also stated that plaintiff failed to participate in the type of treatment consistent with chronic pain syndrome such as physical therapy. AR at 16. This was not a clear and convincing reason because plaintiff testified that he was unable to receive physical therapy due to insurance issues. *Id.* at 47; *see Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (stating that the failure to seek treatment may be a basis for an adverse credibility finding unless there was a good reason for not doing so). But the ALJ's error in this regard was harmless, given the other clear and convincing reasons he cited, as discussed herein, for discounting plaintiff's credibility. *See Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ's error in relying on one of several reasons in support of an adverse credibility determination was harmless because ALJ's remaining reasons and ultimate credibility determination were supported by substantial evidence).

Third, the ALJ correctly observed that plaintiff was often non-compliant with his treatment plan. AR at 16-17; *see also Orn*, 495 F.3d at 638 (the failure to seek treatment for complaints is "a basis for finding the complaint unjustified or exagerrated"); *Tommasetti*, 533 F.3d at 1039. Plaintiff frequently did not show up to appointments and was dismissed from a psychiatric clinic for too many absences.[9] *Id.* at 360, 367, 391-92. His treating physicians were also unsure whether plaintiff was compliant with his medication plan. *See, e.g.*, *id*. at 403, 405.

---

[9] During the September 8, 2009 hearing, plaintiff testified that he did not attend his sessions with Lillian Barnes because he did not drive. AR at 65-66. But plaintiff did not explain why he did not seek alternate modes of transportation such as public transportation.

Fourth, the ALJ found that plaintiff's daily activities were inconsistent with his claimed symptoms.[10] *Id.* at 16; *see Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (a claimant's ability "to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" may be sufficient to discredit him). The ALJ noted that plaintiff could cook, clean, do laundry, do yard work, handle other household chores, run errands, and get his daughter ready for school. AR at 16. "[T]he mere fact a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly capacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But if a claimant is "able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit" him. *Id.* (emphasis in original). Here, the activities appear to be transferable to a work setting and also appear inconsistent with the extent of his claimed mental and physical limitations.

Finally, the ALJ stated that plaintiff's "spotty work record" reflected a lack of motivation to work. AR at 16; *see Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002) (a poor work history negatively affects a claimant's credibility regarding his inability to work). Here, plaintiff has never held a job for longer than a month and last worked in 2004. AR at 272-73. Dr. Malancharuvil, a

---

[10] Plaintiff claims that his statements were not inconsistent with the limitations brought on by his "seizures." Pl. Mem. at 12. Plaintiff does not claim to suffer from seizures and the ALJ does not mention seizures.

13

medical expert, also testified that it appeared that plaintiff had a motivation problem. *Id.* at 54.

The ALJ provided multiple clear and convincing reasons supported by substantial evidence for discounting plaintiff's credibility. Accordingly, the ALJ did not err in this regard.

**C.    The ALJ Properly Discounted Martin's Lay Opinion**

Plaintiff contends that the ALJ did not properly consider the opinion of James B. Martin. Pl. Mem. at 14-16. Specifically, plaintiff characterizes Martin as a "treating physician" to whose opinion the ALJ had a duty to give more weight, and argues the ALJ failed to provide specific and legitimate reasons for rejecting Martin's opinion.[11] *Id.* The court disagrees.

As an initial matter, having carefully reviewed the record and the parties' written submissions, the court rejects plaintiff's characterization of Martin's profession. Plaintiff argues that the ALJ failed to properly consider the opinion of Martin, a treating source. *Id.* at 14. Plaintiff then refers to Martin as "Dr. Martin" and as a treating physician, and relies on case law regarding the opinions of physicians. *Id.* at 14-16. But Martin is in fact a marriage and family therapist ("MFT").[12] AR at 357. Nothing in the record remotely suggests that Martin has a degree or credential that caused him to be regarded as a physician or another acceptable medical source. *See* 20 C.F.R. § 416.913(a). If plaintiff's attorney did

---

[11] Plaintiff also argues that the ALJ had a duty to contact Martin to obtain clarification and/or additional evidence if necessary. Pl. Mem. at 15. The court addresses this issue in Point IV(E) *infra*.

[12] Defendant refers to Martin as a social worker. D. Mem. at 6-7. Although this representation is not technically accurate, in California an MFT and social worker are both licensed by the Board of Behavioral Sciences and can perform many of the same functions. *See* http://www.bbs.ca.gov/.

14

not purposefully seek to mislead this court, then at a minimum she demonstrated a troubling lack of legal knowledge and appreciation for the significance of the distinction between an MFT and a physician.

An MFT is not an acceptable medical source for establishing a medically determinable impairment, but his opinion may considered to show the severity of an impairment. *See* 20 C.F.R. §§ 416.913(a), (d); *see also Turner v. Comm'r*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (social workers are not considered acceptable medical sources under the regulations, but instead are treated as other sources); *Fricke v. Comm'r*, No. 10-1030, 2012 WL 1355664, at *13 (E.D. Cal. Apr. 18, 2012) (the regulations do not recognize MFTs as acceptable medical sources); *Green v. Astrue*, No. 10-01294, 2011 WL 2785741, at *4 (C.D. Cal. Jul. 15, 2011) (an MFT is not an acceptable medical source). Because MFTs are not "acceptable medical sources," their opinions are not entitled to the same standard of review afforded physicians; instead, their opinions are reviewed under the standard afforded lay witnesses. *See Turner*, 613 F.3d at 1224. Thus, if an ALJ wishes to discount the opinion of an MFT, the ALJ must give germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Martin treated plaintiff for an unspecified period, from at least March 2, 2005 through May 11, 2006. AR at 357-60. In a status report, dated May 11, 2006, Martin opined that plaintiff had moderate difficulty sustaining attention, brooding over the past, maintaining energy, completing tasks, and interacting with co-workers and family. *Id.* at 358. Martin further opined that plaintiff had a severe depressed mood, as well as severe difficulty organizing tasks and activities and interacting with supervisors. *Id*. Martin noted that plaintiff had fluctuating alertness and disorganized speech, presented himself in a "bizarre fashion," had

mildly impaired memory, and fair eye contact. *Id.* Consequently, Martin opined that plaintiff had difficulty maintaining his own affairs, was incapable of caring for his daughter, and would be unable to secure employment. *Id.* at 360.

Here, the ALJ properly discounted the opinion of Martin. The ALJ gave little weight to Martin's assessment because it was inconsistent with the mental state examinations conducted by various physicians, plaintiff received conservative treatment, plaintiff was non-compliant with his treatment, and there were no treatment notes to support Martin's opinion.[13] AR at 16-17. All are germane reasons for rejecting Martin's opinion. *See Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (inconsistency with medical record is germane reason for discounting lay opinion). Accordingly, the ALJ did not err when he rejected Martin's lay opinion.

**D.    The ALJ Properly Determined Plaintiff's RFC and Posed a Complete Hypothetical to the Vocational Expert**

Plaintiff argues that the ALJ reached an incorrect RFC determination and posed an incomplete hypothetical to the vocational expert. Pl. Mem. at 16-20. Plaintiff's arguments rest on his assertion that the ALJ improperly rejected Martin's opinion and should have included his limitations in both. *Id.* As the court discussed *supra*, the ALJ properly rejected Martin's opinion. As such, it was proper for the ALJ to exclude Martin's limitations from his RFC determination and the hypothetical posed to the vocational expert.

---

[13] Further, Martin's opinion is undermined by plaintiff's and his mother's testimonies. Martin opined that plaintiff was incapable of taking care of his daughter and handling funds. AR at 360. But plaintiff stated that he took care of his daughter at home, cooking for and reading to her, and would be able to handle his finances if he had money. *Id.* at 320, 322. Plaintiff's mother also testified that plaintiff was the primary caregiver for his daughter. *Id.* at 77.

16

**E.     The ALJ Complied with the Remand Order**

Plaintiff argues that the ALJ failed to comply with the Appeals Council's remand order to seek more evidence and clarification from Martin.  Pl. Mem. at 20-23.  Plaintiff further argues that the ALJ failed to fully analyze Martin's opinion.  *Id.* at 22.  Plaintiff's claim lacks merit.

The Appeals Council, upon remand, ordered the ALJ to, inter alia, obtain any additional evidence from Martin, consider the Martin opinion, reevaluate the plaintiff's RFC and ability to perform jobs in light of his evaluation of the Martin opinion, and retain a vocational expert if warranted.  AR at 158.

The ALJ complied with the remand order.  In the decision, the ALJ discussed Martin's opinion and provided multiple germane reasons for rejecting it, including that there were no additional treatment records to support the opinion. *Id.* at 16-17.  Consequently, the ALJ did not include Martin's limitations in his RFC determination and did not ask the vocational expert any hypotheticals based on Martin's opinion.

Other than the additional records, plaintiff's argument is simply a reiteration of his arguments that the ALJ improperly rejected Martin's opinion and should have incorporated Martin's limitations in his RFC determination.  As for the failure to obtain additional records, there is no evidence that the ALJ did not attempt to obtain additional records, nor does plaintiff even argue that additional records exist.  In its remand order, the Appeals Council stated that the ALJ "may enlist the aid and cooperation of the claimant's representative" in obtaining evidence from Martin.  AR at 158.  This is what the ALJ did, having provided plaintiff the opportunity to submit additional evidence.  *Id.* at 225.  Presumably plaintiff, who was represented by counsel, would have done so had such evidence existed.

17

Accordingly, the ALJ complied with the remand order of the Appeals Council.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: September 19, 2012

SHERI PYM
United States Magistrate Judge